UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| MYRIAM MARINO | : | |
|     Plaintiff | : | |
| | : | Civil No. 3:12-cv-00518-JBA |
| v. | : | |
| | : | |
| EGS ELECTRICAL GROUP, LLC, OZ GEDNEY | : | |
| COMPANY, LLC, | : | |
| Defendants | : | APRIL 29, 2013 |

_____
                                         :


## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

I.      SUMMARY OF ARGUMENT ............................................................................1

II.     FACTUAL BACKGROUND ..............................................................................4

       A.    Plaintiff's Employment ..........................................................................4

              1.     About the Company's East Granby, Connecticut Facility ...................4

              2.     Plaintiff's Assignment To Team Leader ..................................................5

       B.    Co-Worker Complaints By And About Plaintiff and Jessica Smyth  ..............5

              1.     Mr. DeGray's And Mr. McCarter's Complaints About
                      Ms. Smyth ...........................................................................9

              2.     Ms. Smyth's Complaints .........................................................................9

       C.    The Company's Response To The Co-Worker Complaints ...........................10

       D.    Plaintiff's Employment Is Terminated ................................................12

III.    PROCEDURAL HISTORY ..............................................................................13

IV.    DISCUSSION ....................................................................................................13

       A.    Summary Judgment Standard.....................................................................13

**B.**  **Plaintiff's Race, National Origin and Gender Discrimination Claims Fail As A Matter Of Law**.................................................................15

   **1.**  **Plaintiff Cannot Establish A Prima Facie Case Because The Circumstances Of Her Termination Do Not Give Rise To An Inference Of Discrimination** ................................16

     **i.**  **There Is No Evidence Of Any Discriminatory Animus** ......................................................................17

     **ii.**  **There Is No Evidence Of Any Gender Based Animus** .........................................................................21

     **iii.**  **There Is No Evidence Of Preferential Treatment Given To Similarly Situated Non-Hispanic And/Or Male Employees** ............................................22

   **2.**  **Defendants Proffered A Legitimate, Non-Discriminatory Reason For Plaintiff's Discharge**.................................................23

   **3.**  **The Company's Legitimate, Non-Discriminatory Reason For Plaintiff's Discharge Was Not A Pretext For Discrimination** ..........................................................................24

**C.**  **Summary Judgment In Favor Of Defendants Is Warranted On Plaintiff's Claim Of Hostile Work Environment Harassment** ........................25

**D.**  **Plaintiff Cannot Prevail On Her Retaliation Claim** ...........................................28

   **1.**  **Plaintiff's Retaliation Claim Fails Because She Did Not Engage In Protected Activity** ..............................................29

   **2.**  **There Is No Evidence Of A Causal Connection Between The Alleged Protected Activity And Plaintiff's Discharge** ................32

   **3.**  **There Is No Evidence That Defendants' Legitimate, Non-Retalitory Reason For Plaintiff's Discharge Was A Pretext For Retaliation** .............................................34

**E.**  **Plaintiff Cannot Establish A Claim For Negligent Retention And Supervision** ...................................................................35

   **1.**  **Plaintiff Cannot State A Negligence Claim Based On Conduct Occurring In The Course Of Ongoing Employment** ...........35

   **2.**  **Even If Plaintiff May Bring Such A Claim, The Undisputed**

**Facts Establish That It Fails As A Matter Of Law** .............................**37**

**V.      CONCLUSION** ........................................................................................................**39**

# TABLE OF AUTHORITIES

Page(s)

CASES

**Adams-Martin v. Conn. Dep't of Developmental Servs.,**
No. 3:10-cv-00099 (VLB), 2012 U.S. Dist. LEXIS 34288 (D. Conn. Mar. 14, 2012).........22

**Agugliaro v. Brooks Bros., Inc.,**
927 F. Supp. 741 (S.D.N.Y. 1996)...................................................................24

**Anderson v. Liberty Lobby, Inc.,**
477 U.S. 242 (1986)...................................................................................14

**Antonopoulos v. Zitnay,**
360 F. Supp. 2d 420 (D. Conn. 2005) ..............................................................36

**Aulicino v. New York City Dep't of Homeless Servs.,**
580 F.3d 73 (2d Cir. 2009) ..........................................................................27

**Benn v. City of New York,**
482 Fed. Appx. 637 (2d Cir. 2012) .................................................................29

**Bennett v. Hofstra Univ.,**
842 F. Supp. 2d 489 (E.D.N.Y. 2012) ..............................................................31

**Bernard v. J.P. Morgan Chase Bank N.A.,**
No. 08 Civ. 4784 (THK), 2010 U.S. Dist. LEXIS 10195 (S.D.N.Y. Feb. 5, 2010) .............23

**Bickerstaff v. Vassar College,**
196 F.3d 435 (2d Cir. 1999) .........................................................................15

**Blandon v. Teamsters Local Union No. 443,**
No. 3:10cv463(VLB), 2011 U.S. Dist. LEXIS 119328 (D. Conn. Oct. 17, 2011)..........37, 39

**Braheney v. Town of Wallingford,**
No. 3:00 CV 2468 (CFD), 2004 U.S. Dist. LEXIS 5515 (D. Conn. Mar. 30, 2004) ..........23

**Brown v. Henderson,**
115 F. Supp. 2d 445 (S.D.N.Y. 2000) ..............................................................26

**Bush v. Fordham Univ.,**
452 F. Supp. 2d 394 (S.D.N.Y. 2006) ..............................................................33

**Butler v. Raytel Med. Corp.,**
150 Fed. Appx. 44 (2d Cir. 2005) ...................................................................32

i

**Byrnie v. Town of Cromwell Pub. Sch.,**
   73 F. Supp. 2d 204 (D. Conn. 1999) .................................................................25

**Catz v. Rubenstein,**
   201 Conn. 39 (1986).........................................................................................37

**Coley-Allen v. Strong Health, Univ. of Rochester Med. Ctr.,**
   828 F. Supp. 2d 582 (W.D.N.Y. 2011)..............................................................27

**Cook v. CBS, Inc.,**
   47 Fed. Appx. 594 (2d Cir. 2002) ....................................................................15

**D'Amico v. City of New York,**
   132 F.3d 145 (2d Cir. 1998) .............................................................................15

**Davis v. SUNY,**
   802 F.2d 638 (2d Cir.1986) ..............................................................................28

**Dixon v. Int'l Fedn. Of Accountants,**
   416 Fed. Appx. 107 (2d Cir. 2011) ..................................................................29

**Donaldson v. Merrill Lynch & Co., Inc.,**
   794 F. Supp. 498 (S.D.N.Y. 1992).....................................................................25

**El Sayed v. Hilton Hotels Corp.,**
   627 F.3d 931 (2d Cir. 2010) .............................................................................33

**Elbert v. Conn. Yankee Council, Inc.,**
   No. CV010456879S, 2004 Conn. Super. LEXIS 1924 (Conn. Super. Ct. July 16,
   2004) .................................................................................................................37

**Faragher v. City of Boca Raton,**
   524 U.S. 775 (1998)..........................................................................................26

**Farias v. Instructional Sys., Inc.,**
   259 F.3d 91 (2d Cir. 2001) ...............................................................................16

**Ferrand v. Credit Lyonnais,**
   No. 02 Civ. 5191 (VM), 2003 U.S. Dist. LEXIS 17202 (S.D.N.Y. Sept. 30, 2003) .............21

**Figueroa v. City of New York,**
   118 Fed. Appx. 524 (2d Cir. 2004) ..................................................................26

**Fleming v. MaxMara USA, Inc.,**
   371 Fed. Appx. 115 (2d Cir. 2010) ..................................................................33

**Fraser v. United States,**
   236 Conn. 625 (1996)........................................................................................37

**Gibson v. Wyeth Pharms., Inc.,**
   No. 07 Civ. 946 (LTS)(GAY), 2011 U.S. Dist. LEXIS 23935 (S.D.N.Y. Mar. 9,
   2011) ................................................................................................................26, 27

**Grady v. Affiliated Central, Inc.,**
   130 F.3d 553 (2d Cir. 1997) .........................................................................17

**Grillo v. New York City Transit Auth.,**
   291 F.3d 231 (2d Cir. 2002) .........................................................................21

**Grunberg v. Quest Diagnostics, Inc.,**
   No. 3:05CV1201(VLB), 2008 U.S. Dist. LEXIS 8205 (D. Conn. Feb. 5, 2008) .................35

**Hargett v. National Westminster Bank, USA,**
   78 F.3d 836 (2d Cir. 1996) .....................................................................15, 16

**Hicks v. Rubin,**
   6 Fed. Appx. 70 (2d Cir. N.Y. 2001) ...........................................................26

**James v. New York Racing Ass'n,**
   233 F.3d 149 (2d Cir. 2000) .........................................................................14

**Johnson v. County of Nassau,**
   480 F.Supp. 2d 581 (E.D.N.Y. 2007) ...........................................................20

**Kamrowski v. Morrison Mgmt. Specialist,**
   No. 05-CV-9234 (KMK), 2010 U.S. Dist. LEXIS 103290 (S.D.N.Y. Sept. 29, 2010) ..19, 31

**Kaytor v. Elec. Boat Corp.,**
   609 F.3d 537 (2d Cir. 2010) .........................................................................29

**Langner v. Stop & Shop Supermarket Co.,**
   Case No. CV 950377385, 2000 Conn. Super. LEXIS 216 (Conn. Super. Ct. Jan.
   26, 2000) .......................................................................................................20

**Lessey v. Broadway Elec.,**
   No. 08 Civ. 3884 (PKC), 2009 U.S. Dist. LEXIS 105863 (S.D.N.Y. Nov. 2, 2009) ............24

**Lincoln v. St. Francis Hosp. & Med. Ctr.,**
   No. 3:03CV01418 (AWT), 2006 U.S. Dist. LEXIS 59917 (D. Conn. Aug. 24, 2006) ........33

**Mathieu v. Whole Foods Market Group,**
   No. 3:08CV01317(AWT), 2010 U.S. Dist. LEXIS 23479 (D. Conn. Mar. 15, 2010).........39

**McDonnell Douglas Corp. v. Green,**
   411 U.S. 792 (1973)..............................................................15, 21, 23, 28

McKinney v. DOT,
     No. 3:06-cv-2055 (WWE), 2010 U.S. Dist. LEXIS 45773 (D. Conn. May 6, 2010)..........36

McLee v. Chrysler Corp.,
     109 F.3d 130 (2d Cir. 1997) ...............................................................................................19

Miller v. Edward Jones & Co,
     355 F. Supp. 2d 629 (D. Conn. 2005) .................................................................................38

Minton v. Lenox Hill Hospital,
     160 F. Supp. 2d 687 (S.D.N.Y. 2001) .................................................................................34

Norton v. Sam's Club,
     145 F.3d 114 (2d Cir. 1998) .........................................................................................15, 24

Noyer v. Viacom, Inc.,
     22 F. Supp. 2d 301 (S.D.N.Y. 1998) ...................................................................................17

O'Connor v. Viacom Inc.,
     Civil No. 96-7641, 1996 U.S. App. LEXIS 32986 (2d Cir. Dec. 16, 1996) ........................20

Palmer-Williams v. Yale New Haven Hosp.,
     No. 3:08-1526 (JBA), 2011 U.S. Dist. LEXIS 32074 (D. Conn. Mar. 25, 2011) ...............28

Perodeau v. City of Hartford,
     259 Conn. 729 (2002)..........................................................................................35, 36, 37

Pruitt v. Mailroom Tech., Inc.,
     No. 3:06CV1530(WWE), 2007 U.S. Dist. LEXIS 57808 (D. Conn. Aug. 9, 2007) ...........36

Reeves v. Sanderson Plumbing Products, Inc.,
     530 U.S. 133 (2000)....................................................................................15, 16, 23, 24, 34

Rinsler v. Sony Pictures Entertainment, Inc.,
     Civil No. 02 Civ. 4096 (SAS), 2003 U.S. Dist. LEXIS 14754 (S.D.N.Y. Aug. 25,
     2003) ....................................................................................................................................19

Rios v. Buffalo & Fort Erie Pub. Bridge Auth.,
     326 Fed. Appx. 612 (2d Cir. 2009) .....................................................................................26

Risco v. McHugh,
     868 F. Supp. 2d 75 (S.D.N.Y.) ............................................................................................30

Rizzo-Puccio v. College Aux. Servs.,
     71 F. Supp. 2d 47 (N.D.N.Y 1999)......................................................................................18

RK Constructors, Inc. v. Fusco Corp.,
     231 Conn. 381 (1994)...........................................................................................................38

iv

Rose v. Mendon Leasing Co.,
    969 F. Supp. 865 (E.D.N.Y. 1997) ...............................................................21, 25

Ruhling v. Tribune Co.,
    No. CV 04-2430 (ARL), 2007 U.S. Dist. LEXIS 116 (E.D.N.Y. Jan. 3, 2007) ...................30

Saqib v. Stein Devisser & Mintz, PC,
    No. 09-4624-cv, 2010 U.S. App. LEXIS 12188 (2d Cir. June 15, 2010)................19, 30, 31

Scaria v. Rubin,
    117 F.3d 652 (2d Cir. 1997) ...............................................................25, 34

Shore v. Stonington,
    187 Conn. 147 (1982)...............................................................37

Soliman v. Deutsche Bank AG,
    No. 03 Civ. 104 (CBM), 2004 U.S. Dist. LEXIS 9087 (S.D.N.Y. May 19, 2004) ..............19

Texas Dept. of Community Affairs v. Burdine,
    450 U.S. 248 (1981)...............................................................15, 16

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995) ...............................................................29, 34

Vasconcellos v. Mount Sinai Med. Ctr.,
    No. 05 Civ. 10479 (GBD)(HBP), 2011 U.S. Dist. LEXIS 29281 (S.D.N.Y. Feb. 16,
    2011) ...............................................................18, 19

Weinstock v. Columbia Univ.,
    224 F.3d 33 (2d Cir. 2000) ...............................................................14

Williams v. Commission on Human Rights & Opportunities,
    257 Conn. 258 (2001)...............................................................15

Wimes v. Kaleida Health,
    157 Fed. Appx. 327 (2d Cir. 2005) ...............................................................30, 31

Woodard v. TWC Media Solutions, Inc.,
    No. 09-CV-3000 (BSJ)(AJP), 2011 U.S. Dist. LEXIS 1536 (S.D.N.Y. Jan. 3, 2011).........32

STATUTES

42 U.S.C. § 1981...............................................................13, 15, 28, 29

42 U.S.C. § 2000e-3(a)...............................................................29

OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ...............................................................1

v

**Fed. R. Civ. P. 56(c)** ....................................................................................................**13, 14**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MYRIAM MARINO | : | |
|     Plaintiff | : | |
| | : | Civil No. 3:12-cv-00518-JBA |
| v. | : | |
| | : | |
| EGS ELECTRICAL GROUP, LLC, OZ GEDNEY | : | |
| COMPANY, LLC, | : | |
| Defendants | : | APRIL 29, 2013 |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7 and 56 of the

Local Rules of this Court, Defendants EGS Electrical Group, LLC and OZ Gedney Company,

LLC (collectively, "Defendants" or the "Company") move for summary judgment dismissing

Plaintiff Myriam Marino's five-count First Amended Complaint, dated June 18, 2012, in its

entirety.   Summary judgment is warranted based on Plaintiff's own deposition testimony and

other undisputed facts, which establish that Defendants are entitled to judgment as a matter of

law on all claims in this case.

## I.      SUMMARY OF ARGUMENT

The material facts of this case are undisputed: Plaintiff's employment was terminated

following complaints made by Plaintiff (Hispanic female of Puerto Rican origin), Leonard

DeGray (Caucasian male), and Roy McCarter (African American male) about Jessica Smyth

(Caucasian female); and Ms. Smyth's complaints about them.   None of these complaints

included any allegations of discrimination, on any basis, but rather centered on petty slights and

minor annoyances among co-workers; nothing physical.   Plaintiff, Mr. DeGray and Mr.

1

McCarter alleged that Ms. Smyth would stare, smile, clap and laugh at or near them, and otherwise engage in strange behavior.  Ms. Smyth complained about the behavior of Plaintiff, as well as that of Mr. DeGray and Mr. McCarter, reporting that Plaintiff and her co-workers picked on and yelled at her.

Despite coaching from their supervisors, these employees failed to resolve their issues and eliminate the disruptions and distractions from their work in this small facility.  Accordingly, on July 21, 2011, to enforce the Company's directive that these employees cease their childish behavior toward each other, the Company instructed all four employees to individually and separately sign an identical memorandum confirming the Company's expectations for their conduct toward each other going forward.  All four employees were instructed that failure to sign the memorandum would result in termination.  Plaintiff did not sign the memorandum, disputing that she had failed to meet expectations for her conduct to that point, and she was terminated. The other three employees, who also disputed that they had engaged in disruptive conduct toward each other, did sign their individual memoranda and they were not discharged.

Plaintiff's claims of discrimination based on race, national origin and/or gender fail because there is no evidence of animus on the basis of race, national origin or gender; no evidence of preferential treatment given to similarly situated non-Hispanic and/or male employees; nor any other basis from which discrimination may be inferred.  Moreover, after her termination, Plaintiff was replaced by a Hispanic female of Puerto Rican national origin, who was hired as a regular employee.

Plaintiff's claim of discriminatory harassment also fails because Ms. Smyth's conduct, which was directed at Plaintiff, two males – one Caucasian and one African American, was not based on Plaintiff's race, national origin or gender, nor was such alleged conduct objectively and

subjectively offensive on the basis of any protected characteristic.  Indeed, Plaintiff and her male non-Hispanic cohorts objected to the alleged isolated incidents of conduct not as discriminatory, but as strange and intimidating.

Plaintiff's claim of retaliation fails because she did not engage in protected activity. Further, even if Plaintiff's alleged report of a stray, hearsay remark by Ms. Smyth referring to Plaintiff's national origin and/or gender could be considered protected activity, there is no evidence that the reporting of that stray remark by Ms. Smyth was the basis for Defendants' managements' decision to discharge Plaintiff.  It is undisputed that Plaintiff was treated in the same manner as three other employees who were not alleged to have engaged in protected conduct, but like Plaintiff were counseled regarding their conduct toward co-workers.

Finally, Plaintiff's Count alleging negligent retention and supervision is barred as a matter of law.  The law does not permit a claim for negligence-based emotional distress based on conduct occurring in the course of continuing employment; and, to the extent she claims physical injury, Plaintiff's claim is barred by the Connecticut Workers' Compensation Act.   Even assuming that Plaintiff can state a colorable claim under state law, which she cannot, this claim has no merit, as there is no evidence Plaintiff suffered actionable harm at the hands of Ms. Smyth as a result of conduct about which the Company had any reasonable means to know Ms. Smyth might inflict, but failed to prevent.

For all of these reasons, as set forth more fully below, Defendants respectfully request that this Court grant summary judgment in its favor on all counts.

## II.    FACTUAL BACKGROUND[1]

### A.    Plaintiff's Employment

Plaintiff was placed on a temporary assignment at the Company by Staffmark from December 2007 to August 2007.  (Pl. Dep. 18; Am. Compl. ¶ 6.)[2]  Plaintiff filled out an employment application to become a regular employee of the Company on November 14, 2007. (Pl. Dep. 19-20, 23; Pl. Dep. Ex. 1.)[3]  The Company hired Plaintiff on December 10, 2007 as a Kits Assembler, on first shift.  (Pl. Dep. 26, 29; Am. Compl. ¶ 6.)  Plaintiff was hired at $11.75 per hour and after one year, the Company gave her a raise to $12.09 per hour.  (Id., Pl. Dep. 32.)

### 1.  About The Company's East Granby, Connecticut Facility

Plaintiff was assigned at first as a temporary worker and then as a regular employee at the Company's manufacturing plant located in East Granby, Connecticut.  (Pathak Dep. 9.)[4]  It is a small facility only employing approximately 13 hourly employees. (Pathak Aff. 2.)  As a regular employee, Plaintiff reported directly to Mr. Johnson.  (Johnson Dep. 20-21.)[5]  Mr. Johnson reported to Shriram Pathak, Operations Manager in East Granby.  (Pathak Dep. 7.)  Don Young, Vice President of Human Resources, provided human resources oversight for this small facility from the Company's corporate headquarters.  (Young Dep. 9-10.)[6]  The Company maintained

---

[1] For purposes of this Motion only, Defendants accept Plaintiff's deposition testimony as true, but reserve the right to dispute that testimony if this Motion is denied in whole or in part.

[2] A certified copy of the cited portions of Plaintiff's September 18, 2012 deposition is attached at Tab 1 to the simultaneously filed Affidavit of Defense Counsel Alison Jacobs Wice ("Wice Aff."). This transcript is referenced herein as "Pl. Dep. __."

[3] A copy of Plaintiff's Employment Application, introduced and authenticated at Plaintiff's deposition as Exhibit 1, is attached to the Wice Aff. at Tab 2 bearing bates no. EGS/OZG46-48, 54-55.

[4] A certified copy of the cited portions of the deposition transcript of Shriram Pathak is attached at Tab 3 to the Wice Aff. and referenced herein as "Pathak Dep. __."

[5] A certified copy of the cited portions of the deposition transcript of Doug Johnson is attached at Tab 4 to the Wice Aff. and referenced herein as "Johnson Dep. __."

[6] A certified copy of the cited portions of the deposition transcript of Donald Young is attached at Tab 5 to the Wice Aff. and referenced herein as "Young Dep. __."

strong policies against harassment and discrimination.  (Pl. Dep. Exs. 2, 3 and 4.)[7]

### 2.   Plaintiff's Assignment To Team Leader

In July 2010, Mr. Johnson offered Plaintiff the position of Team Leader on second shift, where she would have the additional responsibility of closing the shop at night; this reassignment included a pay raise.  (Pl. Dep. 32-34; Johnson Dep. 79.)  The Company only operated its second shift during the Company's busy season which lasted approximately six months from June to January.  (Pl. Dep. 37-38; Johnson Dep. 79.)  Plaintiff accepted the assignment to second shift Team Leader and she received a raise to $13.09 per hour.  (Pl. Dep. 39.)  When second shift ended and Plaintiff returned to first shift in January or February 2011, her pay remained the same, as is the Company's practice with employees who seasonally move from second shift to first and back.  (Pl. Dep. 40-41; Johnson Dep. 72, 79-80; Am. Compl. ¶¶ 8-9.)  In June 2011, the Company notified Plaintiff it was time to return to second shift, but Plaintiff did not agree to change shifts.  (Pl. Dep. 40-41; Am. Compl. ¶ 10.)  Plaintiff testified that she did not want to go back to second shift because she wanted to keep the hours that she had on the first shift.  (Pl. Dep. 45.)  As a result of refusing to return to the second shift, Plaintiff's pay was restored to the rate she received before her Team Leader assignment and she no longer received a premium rate related to that second shift role.  (Pl. Dep. 42-43; Am. Compl. ¶ 10.)

### B.   Co-Worker Complaints By And About Plaintiff And Jessica Smyth

From the location where Plaintiff worked, the Kit Assembly area, Plaintiff could see the printing, braiding, extruder and re-spooling stations; and other employees would pass by

---

[7] A copy of the Company's Employee Handbook for the Emerson Business Ethics Program, introduced and authenticated at Plaintiff's deposition as Exhibit 2, is attached to the Wice Aff. at Tab 6 bearing bates no. EGS/OZG88-102.  A copy of the Company's poster, introduced and authenticated at Plaintiff's deposition as Exhibit 3, is attached to the Wice Aff. at Tab 7 bearing bates no. EGS/OZG103.  A copy of the Company's Harassment in the Workplace policy, introduced and authenticated at Plaintiff's deposition as Exhibit 4, is attached to the Wice Aff. at Tab 8 bearing bates no. EGS/OZG14-16.

Plaintiff's work area regularly to get to the facility's restroom and other common areas of the plant.  (Pl. Dep. 57, 64.)  Plaintiff's station was an access point to the whole facility.  (Johnson Dep. 27-28.)  Plaintiff claims that Ms. Smyth and other employees would make eye contact with her from their work stations and speak to her as they passed Kit Assembly en route to other parts of the plant.  (Pl. Dep.76, 101, 116.)

Plaintiff perceived Ms. Smyth's conduct to be different than other passing co-workers' and, according to Plaintiff,  she began complaining to Mr. Johnson about Ms. Smyth's conduct when she returned to first shift in early 2011.  (Pl. Dep. 108, 143-144; Am. Compl. ¶ 11.) Plaintiff reported that:

- Ms. Smyth[8] was laughing, staring and smiling at her.  (Pl. Dep. 116.)

- On at least one occasion, Ms. Smyth engaged in intimidating conduct toward or near Plaintiff, including, throwing a napkin in her work area, banging a water bottle against her own hand, smacking her fist with her hand; and pushing spools against Plaintiff's work table.  (Pl. Dep. 111-112, 114, 116, 121-122, 131, 181; Johnson Dep. 29; Am. Compl. ¶ 11.)

- Ms. Smyth gave her a thumbs up, laughs, giggles and stares at her.  (Pl. Dep. 143; Pathak Dep. 27, 55; Pathak Dep. Exs. 9 and 10.)[9]

In addition to these off-putting mannerisms, on one occasion, Plaintiff alleges that she told Mr. Johnson that she was afraid Ms. Smyth would try to do something to her.  (Pl. Dep. 123.)  Plaintiff never reported to Mr. Johnson that she had any reason to believe Ms. Smyth would harm her or that Ms. Smyth had acted in any way that suggested to Plaintiff that she was in physical danger.  (Johnson Dep. 29, 38.)  Plaintiff conceded that she had no basis to believe Ms. Smyth was a physical threat and admitted that Ms. Smyth never tried to hurt her and never

---

[8] Ms. Smyth was Plaintiff's co-worker and employed in the position of Braider Operator.  (Johnson Dep. 15.)
[9] A copy of Mr. Pathak's email exchanges with Mr. Young dated March 4, 2011, introduced and authenticated at Mr. Pathak's deposition as Exhibit 9, is attached to the Wice Aff. at Tab 9 bearing bates no. EGS/OZG81-83.  A copy of Mr. Pathak's email exchanges with Mr. Young dated June 17, 2010, introduced and authenticated at Mr. Pathak's deposition as Exhibit 10, is attached to the Wice Aff. at Tab 10 bearing bates no. EGS/OZG84-85.

took any physical action toward Plaintiff.  (Pl. Dep. 123, 179-180.)  Mr. Pathak specifically asked Plaintiff if any of Ms. Smyth's behaviors were threatening and Plaintiff said no.  (Pathak Dep. 27-28, 57.)

Understanding these complaints to be an issue of personality conflicts, Mr. Johnson advised Plaintiff to ignore Ms. Smyth and that he would discuss the issue with Mr. Pathak.  (Pl. Dep. 110, 115; Am. Compl. ¶ 13.)  After several complaints to Mr. Johnson regarding Ms. Smyth's mannerisms that were irritating or upsetting her, Plaintiff and Mr. Johnson met together with Mr. Pathak, who told Plaintiff that the Company would look into her complaints. (Pl. Dep. 144, 146; Pathak Dep. 63.)  He also suggested to Plaintiff that she try to ignore Ms. Smyth's smiles, laughing, and strange gestures. Id.

Plaintiff also alleges that at some unspecified time, a temporary worker told Nancy Adorno, Plaintiff's co-worker, who then told Plaintiff, that on one occasion Ms. Smyth referred to Plaintiff as a "fucking Puerto Rican bitch" and she wanted to "fuck [Plaintiff] up."[10] (Pl. Dep. 107-108; Am. Compl. ¶ 12.)  Plaintiff admits that Ms. Smyth never made this comment to Plaintiff and Ms. Smyth never said anything to Plaintiff about her being Puerto Rican.  (Pl. Dep. 107, 122, 177.)  Plaintiff "believes" she told Mr. Johnson about what the temporary worker once told Ms. Adorno Ms. Smyth said about Plaintiff.[11]  (Pl. Dep. 109-110; Am. Compl. ¶ 13.)

Plaintiff also complained to Lynn Ayers, another co-worker, on one occasion about Ms. Smyth's conduct, including that Ms. Smyth had walked by Plaintiff's work area banging a water bottle against her fist, starring at Plaintiff, and standing near Plaintiff with her arms crossed and

---

[10] Plaintiff alleges that at some unspecified time another co-worker also told her that Ms. Smyth had referred to the Plaintiff as a "fucking Puerto Rican bitch", but admits that she did not tell anyone in management about that.  (Pl. Dep. 136-138.)
[11] Mr. Johnson, Mr. Pathak and Mr. Young deny that Plaintiff told them or that they were aware that Ms. Smyth allegedly had called her a "fucking Puerto Rican bitch."  (Johnson Dep. 30; Pathak Dep. 27; Young Dep. 91.)

smiling funny.  (Pl. Dep. 119-121; Johnson Dep. 19; Am. Compl. ¶ 15.)  Ms. Ayers told Plaintiff

to talk to Mr. Johnson.  (Pl. Dep. 120.)  Plaintiff also complained to Mr. Farslow on one occasion

that Ms. Smyth was banging a water bottle while walking near Plaintiff's work area.  (Pl. Dep.

113-114, 154.)  Mr. Farslow told Plaintiff that he would let Mr. Pathak know.  Id.

On June 23, 2011, the same day she had complained to Mr. Farslow, Plaintiff called the

Company's Compliance Hotline.  (Pl. Dep. 145-146; Pl. Dep. Ex. 5; Am. Compl. ¶ 17.)[12]  In the

course of this Hotline call, Plaintiff reported:

> . . . since 2009, exact date unknown, Grader Operator, Jessica SMITH [sic], has
> been harassing MARINO.  SMITH goes into MARINO's work area and makes
> bullying, intimidating, and threatening gestures.  SMITH may have a water bottle
> in her hand and swing it at MARINO as though she will hit her.
>
> She doesn't think SMITH was joking as the behavior is very intimidating and
> harassing. The behavior has caused MARINO to be edgy and shaky.  SMITH also
> harasses and argues with Extruder Operator, Roy MCARTHUR and Nancy
> ADORNO.
>
> MARINO complained to Facility Supervisor, Doug JOHNSON, and Manager,
> Shreland [sic] UNKNOWN, in 06/2011, exact date unknown.   Quality
> Technician, Lenny DEGRAY, had the same complaint about SMITH to Shreland.
> SMITH, DEGRAY, Shreland, and MARINO had a meeting.
>
> Shreland stated that if the behavior continued, they could possibly be terminated.
> After reporting SMITH to Shreland, SMITH's behavior worsened. The taunting
> and bullying increased.  JOHNSON has not taken any action.  On 06/23/2011,
> MARINO went to the restroom.
>
> When she exited, SMITH just started laughing at her. MARINO believes that
> SMITH behaves the way she does in order to get rid of MARINO.  She may be
> trying to harass MARINO until she quits.  And after reporting her, SMITH seems
> to have even more of a vendetta against MARINO.
>
> MARINO would like for the company to be made aware of the behavior and
> retaliation. Corrective action should be taken to stop this.

(Pl. Dep. Ex. 5; Pl. Dep. 145, 158, 159.)

Plaintiff did not complain on this call, or at any other time, of any conduct or comment

---

[12] A copy of Plaintiff's Compliance Hotline Incident Description, introduced and authenticated at Plaintiff's
deposition as Exhibit 5, is attached to the Wice Aff. at Tab 11 bearing bates no. EGS/OZG79-80.

based on her race, national origin or gender.  (Pl. Dep. Ex. 5.)  In fact, the Hotline call included

Plaintiff's own report that she was subject to the same conduct by Ms. Smyth as Mr. DeGray, a

Caucasian male.  Id.  It is undisputed that the call report accurately reflects Plaintiff's call.  (Pl.

Dep. 160; Pl. Dep. Ex. 5.)

### 1.  Mr. DeGray's And Mr. McCarter's Complaints About Ms. Smyth

Leonard DeGray (Caucasian male) and Roy McCarter (African American male) also

complained about Ms. Smyth to management, including that Ms. Smyth would stare, smile and

laugh at or near them.  (Pl. Dep. 62, 67, 102, 105, 114, 116, 121-122, 140-141; Johnson Dep.

18.)  Like Plaintiff, Mr. DeGray and Mr. McCarter complained that Ms. Smyth would make a

thumbs up sign, laugh, and stare at them.  (Pl. Dep. 105, 140-141; Johnson Dep. 16, 18, 28;

Pathak Dep. 28-30; Am. Compl. ¶ 15.)  Mr. DeGray also complained on his June 11, 2010

hotline call that Ms. Smyth was displaying "strange and bizarre" behavior, including that she

"laughs at people, points and snickers, stares at people, throws tools, slams doors, and bangs on

machinery." (Pathak Dep. Ex. 12.)[13]  Mr. DeGray made a second call to the Hotline on February

17, 2011, stating that Ms. Smyth began to "act up again", including cackling at herself, sneering

at him with her fists clenched, standing with her arms crossed while glaring at him.  (Pathak Dep.

Ex. 12.)  Mr. Young spoke with Mr. DeGray about the concerns he expressed on the Hotline call.

(Young Dep. 37; Pathak Dep. Ex. 9.)

### 2.  Ms. Smyth's Complaints

Ms. Smyth also complained about co-workers to management.  (Johnson Dep. 41; Pathak

Dep. 37-40, 86.)  She objected to Plaintiff's behavior, and that of Mr. DeGray's and Mr.

McCarter's, toward her, including reporting that those other employees were picking on her and

---

[13] A copy of Mr. DeGray's Compliance Hotline Incident Description, introduced and authenticated at Mr. Pathak's deposition as Exhibit 12, is attached to the Wice Aff. at Tab 12 bearing bates no. EGS/OZG77-78.

yelling at her.  Id.  Ms. Smyth also complained to Mr. Pathak on more than one occasion about Plaintiff and Mr. DeGray, upset that they would walk away from her and not talk to her.  (Pathak Dep. 37-40, 86.)  Plaintiff admits that she does not know if any employees, including Ms. Smyth, complained about her conduct while she was an employee.  (Pl. 118-119, 165.)  Plaintiff testified that she saw Ms. Smyth crying once in Mr. Johnson's office and another time in Mr. Pathak's office about Plaintiff, Mr. DeGray and Mr. McCarter.  (Pl. Dep. 103, 114.)

### C.    The Company's Response To The Co-Worker Complaints

As discussed above, Mr. Pathak and Mr. Johnson received several reports and complaints from employees, including Plaintiff, Mr. DeGray, and Mr. McCarter about Ms. Smyth, for "weird mannerisms" including clapping, smiling, and pointing; and by Ms. Smyth about that group picking on her.  (Johnson Dep. 16, 18, 28, 41; Pathak Dep. 27.)  Mr. Pathak and Mr. Johnson discussed with each other how to handle the complaints, and Mr. Pathak had conversations with Mr. Young about possible responses to the issues among these employees. (Johnson Dep. 16; Pathak Dep. 30; Young Dep. 53.)

Mr. Johnson talked to Ms. Smyth on several occasions about her behavior and told her to stop doing what she was doing.[14]  (Johnson Dep. 34.)  Mr. Pathak met with Ms. Smyth and told her that her behavior was disruptive and would not be tolerated.  (Pathak Dep. 71; Pathak Dep. Ex. 10.)  Mr. Johnson spoke with Ms. Smyth again on June 28, 2011 and told her that the giggling, laughing and clapping on the floor must stop because it bothered other employees, she needed to act more professional, and if she felt other employees were provoking her she needed

---

[14] Plaintiff admits that she does not know whether an investigation was conducted, what Mr. Johnson did after she complained to him, and whether Mr. Pathak talked to Ms. Smyth.  (Pl. Dep. 132, 155-156.)

10

to ignore them and do her job.  (Johnson Dep. 53-54; Johnson Dep. Ex. 3.)[15]  Mr. Young also

spoke with Ms. Smyth about her behavior, and she denied doing anything.  (Young Dep. 41-42;

Pathak Dep. Ex. 9.)

     Mr. Pathak and Mr. Johnson also met with Plaintiff, Mr. DeGray, Mr. McCarter and Ms.

Smyth as a group on two occasions, including on March 4, 2011, to discuss their behavior and

tell them all that they must stop their childish behavior.  (Pl. Dep. 144-145, 147-148; Johnson

Dep. 47-48; Pathak Dep. 31, 35-36, 62-63; Pathak Dep. Ex. 9.)  Mr. Pathak and Mr. Johnson told

all four employees that if their conduct continued they were in danger of losing their jobs.  (Pl.

Dep. 156; Pathak Dep. 80.)  Plaintiff understood that when Mr. Johnson said he wanted them to

stop their childish behavior, he was talking to all four employees.  (Pl. Dep. 148.)  Plaintiff

testified that during the meeting they were told to stop their behavior because they were all good

workers and the Company did not want to lose any of them.  (Pl. Dep. 144-146.)  Despite this

counseling, Plaintiff felt Ms. Smyth's conduct persisted and she called the Hotline on June 23,

2011.  (Pl. Dep. 145-146; Pl. Dep. Ex. 5.)  In response to the Hotline call, Mr. Young contacted

Mr. Pathak, who was already well aware of the complaints by and about Ms. Smyth; and they

decided to have another meeting with all of the employees.  (Pathak Dep. 77-78; Young Dep.

54.)

     On July 20, 2011, Plaintiff, Mr. DeGray, Mr. McCarter, and Ms. Smyth had a meeting

with Mr. Pathak, Mr. Johnson and Mr. Young, who participated over the phone.[16]  (Pl. Dep. 161,

167; Johnson Dep. 58; Pathak Dep. 87-88; Young Dep. 31; Am. Compl. ¶ 10.)  In the meeting,

Mr. Young explicitly warned the four employees that they were required to stop their childish

---

[15] A copy of Mr. Johnson's email to Mr. Pathak dated June 28, 2011, introduced and authenticated at Mr. Johnson's
deposition as Exhibit 3, is attached to the Wice Aff. at Tab 13 bearing bates no. EGS/OZG87.
[16] Plaintiff has never met Mr. Young before.  (Pl. Dep. 161.)

behavior.  (Pl. Dep. 161-163; Johnson Dep. 58; Pathak Dep. 87-88; Young Dep. 31, 76.)  Mr. Young asked each employee if they agreed to commit to the Company's expectations of professional conduct going forward and everyone, including Plaintiff, responded in agreement. (Pathak Dep. 88; Young Dep. 78, 105-106.)

Plaintiff, Mr. DeGray, Mr. McCarter and Ms. Smyth were told they would receive a letter summarizing the meeting and if they failed to sign the written statement summarizing the meeting they would be terminated.  (Johnson Dep. 60-61; Pathak Dep. 89-90; Young Dep. 31, 76, 78-79.)  Mr. Young decided that following the meeting, the employees would have to sign the memorandum.  (Young Dep. 31.)  Mr. Johnson hoped that all four employees would sign his or her letter, as he did not want anybody to lose their job.  (Johnson Dep. 62.)

### D.    Plaintiff's Employment Is Terminated

On July 21, 2011, Plaintiff, Mr. DeGray, Mr. McCarter and Ms. Smyth received identical memorandums confirming the Company's expectations for professional conduct toward each other going forward.  (Pl. Dep. 166-167; Pl. Dep. Ex. 6; Am. Compl. ¶ 20.)[17]  The July 21, 2011 memorandum to each employee stated in relevant part:

> During the conference call, Don explained that the reported behavior was unacceptable in the work environment and needed to be corrected immediately. This type of conduct is unprofessional and has become distraction to the workforce.  In addition, both Doug Johnson and I have been repeatedly pulled away from our production responsibilities to address these behavioral problems.
>
> Don stated that he wanted a commitment to both me and to him that the behavior in question would end immediately.  Each employee had a choice to either agree to this commitment or to end their employment effective immediately.
>
> Miriam, during the call you verbally acknowledged this agreement and stated that you understood that any continued issues concerning your conduct will result in your termination.  In your commitment, please read and sign the agreement below.

---

[17] A copy of Plaintiff's July 21, 2011 memorandum, introduced and authenticated at Plaintiff's deposition as Exhibit 6, is attached to the Wice Aff. at Tab 14 bearing bates no. EGS/OZG22.

(Pl. Dep. Ex. 6.)

Plaintiff met with Mr. Pathak and Mr. Johnson and told them that she was not going to sign the memorandum.  (Pl. Dep. 166-167.)  Plaintiff refused to sign the memorandum because she did not think she did anything wrong.  (Pl. Dep. 170.)  As warned, because Plaintiff did not sign the memorandum, the Company terminated her employment.  (Pl. Dep. 172.)  Mr. DeGray, Mr. McCarter and Ms. Smyth also indicated that they disagreed that they had engaged in any misconduct toward any of the others, but they signed the memorandum and thus, they were not disciplined further or discharged. (Young Dep. 79; Pathak Aff. ¶¶ 3-7.)

## III.   PROCEDURAL HISTORY

Plaintiff initiated this action against Defendants on April 5, 2012, and filed her First Amended Complaint on June 18, 2012, asserting: race discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act ("CFEPA"); national origin discrimination and harassment in violation of Title VII and the CFEPA; gender discrimination and harassment in violation of Title VII and the CFEPA; retaliation in violation of Title VII, 42 U.S.C. § 1981, and the CFEPA; and negligent retention and supervision.

The undisputed facts of this case fall far short of supporting Plaintiff's asserted claims, and, accordingly, Defendants are entitled to summary judgment as a matter of law on all Counts.

## IV.   DISCUSSION

### A.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether

summary judgment should be granted, the United States Supreme Court has explained that:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party . . . . If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  In essence, the inquiry is "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted; internal quotations omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (citations omitted; emphasis in original).  For purposes of summary judgment, a fact is "material" if it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are insufficient to preclude summary judgment.  Id. at 248.  Likewise, an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In a discrimination case, an employer is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).  "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  D'Amico v. City of New

14

York, 132 F.3d 145, 149 (2d Cir. 1998).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999).  As the Second Circuit has noted, a trier of fact "cannot infer discrimination from thin air."  Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).

### B.  Plaintiff's Race, National Origin And Gender Discrimination Claims Fail As A Matter of Law

Plaintiff claims that by terminating her employment, the Company discriminated against her on the basis of her race, national origin and/or gender.  To prevail on her claims of employment discrimination under Title VII, 42 U.S.C. § 1981[18], and the CFPEA[19], Plaintiff must first establish a prima facie case of discrimination by demonstrating that: (i) she is a member of a protected class; (ii) she is qualified for the position; (iii) she was subjected to an adverse employment decision; and (iv) the circumstances give rise to an inference of discrimination.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Hargett v. National Westminster Bank, USA, 78 F.3d 836, 838 (2d Cir. 1996).

If Plaintiff establishes a prima facie case, the burden then shifts to Defendants to proffer a legitimate, non-discriminatory reason for the adverse employment action.  Reeves, 530 U.S. 133, 142 (2000) (citation omitted).  "This burden is one of production, not persuasion; it can involve no credibility assessment."  Id. (citation omitted; internal quotations omitted).  At this stage,

---

[18] Plaintiff's claims under 42 U.S.C. § 1981 are governed by the same three step McDonnell Douglas burden shifting framework as her claims under CFEPA and Title VII.  Cook v. CBS, Inc., 47 Fed. Appx. 594, 596 (2d Cir. 2002).
[19] The burden shifting framework for analyzing discrimination claims under Title VII and CFEPA are the same. Williams v. Commission on Human Rights & Opportunities, 257 Conn. 258, 278 (2001) ("We have often looked to federal employment discrimination law for guidance in enforcing our own anti-discrimination statute.") (internal quotations omitted).

Defendants need only proffer, not prove, the existence of a non-discriminatory reason for Plaintiff's discharge.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-256 (1981); Fisher, 114 F.3d at 1337 (holding that the presumption of discrimination disappears once the employer has proffered a legitimate business reason for the adverse action).

Once Defendants have met their burden of production, Plaintiff must demonstrate that the legitimate reasons offered by Defendants were not the true reasons for the adverse action, but were merely a pretext for impermissible discrimination.  Reeves, 530 U.S. at 143.  See Farias v. Instructional Sys., Inc., 259 F.3d 91, 99 (2d Cir. 2001) (summary judgment granted because plaintiffs did not produce any evidence of race/national origin discrimination to rebut defendant's legitimate, non-discriminatory grounds for its actions).  "Although the intermediate evidentiary burden shifts back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves, 530 U.S. at 143 (citation omitted; internal quotations omitted).

## 1. Plaintiff Cannot Establish A Prima Facie Case Because The Circumstances Of Her Termination Do Not Give Rise To An Inference Of Discrimination

Assuming for purposes of this Motion that Plaintiff can satisfy the first three prongs of her prima facie case, Plaintiff's claims of race, national origin and gender discrimination should be dismissed because there is no evidence that gives rise to an inference of discrimination. Plaintiff relies only on one or two inadmissible hearsay stray remarks, neither of which were made directly to Plaintiff, as the putative connection between her employment and any protected characteristic.  (Pl. Dep. 107-108, 136-138; Am. Compl. ¶ 12.)  Plaintiff also alleges in her Amended Complaint that she was treated differently from Caucasian employees and Defendants "exhibited preferential treatment of their Caucasian employee, Ms. Smyth, refusing to investigate

the plaintiff's legitimate complaints of hostile work environment based upon her status as a Hispanic, Puerto Rican female." (Am. Compl. ¶ 23.) Plaintiff's prima facie case, founded on hearsay and a conclusory unsupported allegation, fails for two reasons: (1) there is no evidence whatsoever of any race, national origin or gender based animus against Plaintiff; and (2) there is no evidence of preferential treatment given to any similarly situated non-Hispanic and/or male employees; and in fact, the undisputed record demonstrates that Plaintiff was treated the same as her non-Hispanic and male co-workers.

### i.  There Is No Evidence Of Any Discriminatory Animus

Plaintiff's race (Hispanic) and national origin (Puerto Rican) discrimination claims fail because she has no evidence whatsoever that could give rise to an inference that termination of her employment was motivated by race or national origin discrimination. Indeed, claims of any such bias defy logic where it is undisputed that Mr. Johnson hired and promoted Plaintiff during her employment, and the Company hired a Hispanic female to replace Plaintiff. (Johnson Dep. 13, 79; Pathak Aff. ¶ 8.) See Noyer v. Viacom, Inc., 22 F. Supp. 2d 301, 307 (S.D.N.Y. 1998) (evidence that plaintiff was replaced by individual of the same protected class shows that employer was not motivated by discriminatory animus); Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire."). Further, there are no admissible statements or actions, particularly any such evidence of discriminatory animus that could be attributed to a decisionmaker, that connects Plaintiff's race or national origin to any employment decision. Indeed, it is undisputed that no one at the Company made any negative race or national origin related marks directly to Plaintiff.

17

Plaintiff allegation of one or two stray remarks that Ms. Smyth, who was not a decisionmaker regarding Plaintiff's employment, made to another employee and/or a temporary worker, but never to Plaintiff does not carry her burden on these Counts.  Specifically, she alleges that at some unspecified time she heard second-hand from two other employees that Ms. Smyth referred to Plaintiff as a "fucking Puerto Rican bitch" (Pl. Dep. 107, 136-138; Am. Compl. ¶ 12.)  While Plaintiff "believes" she reported this comment to Mr. Johnson, she admits:

- Ms. Smyth never made this comment to Plaintiff;
- Plaintiff never heard Ms. Smyth refer to her in this manner; and
- Ms. Smyth never said anything to Plaintiff about her being Puerto Rican.

(Pl. Dep. 107, 109-110, 122, 177; Am. Compl. ¶ 13.)

Ms. Smyth's alleged comments to a non-employee and a co-worker (other than Plaintiff) on one or two occasions is inadmissible hearsay and cannot be considered on a motion for summary judgment.  Rizzo-Puccio v. College Aux. Servs., 71 F. Supp. 2d 47, 57 (N.D.N.Y 1999) (plaintiff's deposition testimony as to what she was told will not be considered by the Court in connection with employer's motion for summary judgment because the statements constituted hearsay that would be inadmissible at trial); Vasconcellos v. Mount Sinai Med. Ctr., No. 05 Civ. 10479 (GBD)(HBP), 2011 U.S. Dist. LEXIS 29281, at *57-58 (S.D.N.Y. Feb. 16, 2011)[20] (stray remark that "Hispanics are not qualified to work in this position" is "likely inadmissible hearsay," and "even if admissible '[a]bsent further indicia of discrimination, such an allegation is insufficient to establish an inference of discrimination.' . . . . The remark is even more inconsequential because it was not made to plaintiff, about plaintiff, in her presence, and was not connected in any way with any adverse employment action against plaintiff.");

---

[20] A true and correct copy of cases not published in an official reporter, as retrieved from the LEXIS database, are attached to the Wice Aff. at Tab 15.

Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9234 (KMK), 2010 U.S. Dist. LEXIS 103290, at *43 (S.D.N.Y. Sept. 29, 2010) (dismissing plaintiff's gender discrimination claim because the only allegation that suggested an inference of discrimination was plaintiff's allegations that her supervisor commented to numerous people, but not to plaintiff, that the supervisor wanted a man for the position and plaintiff could not rely on this hearsay allegation to survive summary judgment).

Even if this remark was not inadmissible hearsay, it is at best a stray remark made by a non-decisionmaker that was not made directly to Plaintiff and thus, cannot establish an inference of discrimination.  Saqib v. Stein Devisser & Mintz, PC, No. 09-4624-cv, 2010 U.S. App. LEXIS 12188, at *3-4 (2d Cir. June 15, 2010) (affirming summary judgment dismissing ethnicity and religious discrimination claims because "[e]ven if the allegation that a co-worker commented that the plaintiff 'looked like a terrorist' . . . were construed to evidence some proscribed bias . . . it would be insufficient to state a prima facie discrimination claim."); Vasconcellos, supra; Soliman v. Deutsche Bank AG, No. 03 Civ. 104 (CBM), 2004 U.S. Dist. LEXIS 9087, at *25 (S.D.N.Y. May 19, 2004) (plaintiff could not establish a prima facie case of race discrimination where he alleged that he overheard someone call him a "sand nigger" in passing, his supervisor told him he was like "an Arab selling in a bazaar" and his supervisor made a statement to the effect that "all blacks are good for is dancing.").  It is undisputed that Ms. Smyth was not the decisionmaker regarding termination of Plaintiff's employment. (Young Dep. 31.)  See McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997) (holding that the plaintiff failed to establish a prima facie case where the individual who made the remarks was not a decisionmaker); Rinsler v. Sony Pictures Entertainment, Inc., Civil No. 02 Civ. 4096 (SAS), 2003 U.S. Dist. LEXIS 14754, at *24 (S.D.N.Y. Aug. 25, 2003) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen,

19

983 F.2d 509, 545 (3d Cir. 1992)) ("Stray remarks by non-decisionmakers . . . are rarely given great weight, particularly if they are made temporally remote from the date of decision.").

Further, this remark is not connected in any way to the termination decision that Plaintiff challenges.  "In order for [stray] remarks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision."  Johnson v. County of Nassau, 480 F.Supp. 2d 581, 599 (E.D.N.Y. 2007) (internal citations omitted).  Plaintiff admitted that she had no reason to believe that Mr. Pathak, Mr. Johnson or Mr. Young would make decisions about her employment because she was Hispanic or Puerto Rican.  (Pl. Dep. 49, 51-52, 164, 173-174.)  The only reason Plaintiff believes Ms. Smyth was motivated by Plaintiff's race and/or national origin was because Plaintiff heard from other employees that Ms. Smyth referred to Plaintiff's national origin and arguably her gender.  (Pl. Dep. 173-174, 176.)  There is no evidence that Ms. Smyth's comment to a temporary worker or another co-worker was related to Plaintiff's termination.  See O'Connor v. Viacom Inc., Civil No. 96-7641, 1996 U.S. App. LEXIS 32986, at *8-9 (2d Cir. Dec. 16, 1996) (affirming summary judgment for the employer where plaintiff showed no connection whatsoever between the stray remark and his termination); Langner v. Stop & Shop Supermarket Co., Case No. CV 950377385, 2000 Conn. Super. LEXIS 216, at *31 (Conn. Super. Ct. Jan. 26, 2000) ("Even occasional comments, or 'stray remarks,' which are clearly suggestive of bias, 'by themselves, and without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's motion for summary judgment.") (citing Dobrich v. General Dynamics Corp., Electric Boat Division, 40 F. Supp. 2d 90, 102 (D. Conn. 1999)).

### ii.  There Is No Evidence Of Any Gender Based Animus

Plaintiff's claim that the Company discriminated against her on the basis of her gender is

without foundation.  As discussed above, Ms. Smyth's comment to a temporary worker and another co-worker, referring to Plaintiff as a "bitch" is inadmissible hearsay and, even if admissible, they are isolated stray remarks, insufficient as a matter of law to carry Plaintiff's evidentiary burden for a gender discrimination claim.  See Ferrand v. Credit Lyonnais, No. 02 Civ. 5191 (VM), 2003 U.S. Dist. LEXIS 17202, at *29-30 (S.D.N.Y. Sept. 30, 2003) (dismissing plaintiff's claim of gender discrimination where plaintiff's supervisor made such remarks to another employee as "bitch," "cunt," "whore," "slut" and "tart" when referring to plaintiff because "this evidence falls short of making a showing under McDonnell Douglas.").  Contrary to Plaintiff's baseless and conclusory allegation, there is no evidence connecting Plaintiff's gender with any decision regarding her employment.  Indeed, Plaintiff admitted that she had no reason to believe that Mr. Pathak or Mr. Johnson made decisions about her employment because of her gender and that she did not know if Ms. Smyth, who is also female, was motivated by Plaintiff's gender.  (Pl. Dep. 49, 51, 174.)

It is well-settled that where, as here, Plaintiff merely makes conclusory allegations based on nothing more than her belief that a protected basis was a motivating factor in the termination – without any evidence to support those allegations – they are insufficient to demonstrate discrimination.  See Grillo v. New York City Transit Auth., 291 F.3d 231 (2d Cir. 2002); Rose v. Mendon Leasing Co., 969 F. Supp. 865, 868 (E.D.N.Y. 1997) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)) ("'purely conclusory allegations of discrimination absent any concrete particulars,' will be insufficient to withstand defendant's motion for summary judgment").

### iii. There Is No Evidence Of Preferential Treatment Given To Similarly Situated Non-Hispanic And/or Male Employees

Plaintiff's conclusory allegations about the purportedly preferential treatment of co-workers are insufficient as a matter of law to establish her claims of discrimination.  There is no evidence of preferential treatment given to similarly situated non-Hispanic and/or male employees.  To the contrary, the undisputed record demonstrates that Plaintiff was treated the same as her non-Hispanic and male co-workers.

It is undisputed that Plaintiff, Mr. DeGray, and Mr. McCarter made complaints about Ms. Smyth, whose conduct toward each of them was essentially identical, and that Ms. Smyth similarly made complaints about their conduct.  (Pl. Dep. 62, 67, 102, 104, 111-112, 114, 116, 121-122, 131, 140-141, 143, 181; Johnson Dep. 18, 41; Pathak Dep. 37-40, 86.)   It is also undisputed that the Company found that the underlying conduct of all four (two women, two men; two are Caucasian, one is African American, and one, Plaintiff, is Hispanic) indicated there was a personality conflict among them, founded on childish behavior.  (Johnson Dep. 47-48; Pathak Dep. 31, 35-36, 62-63, 100; Young. Dep. 31, 41.)   The Company instructed all four employees to individually and separately sign an identical memorandum confirming the Company's expectations for their conduct toward each other going forward.  The July 21, 2011 memorandum was given to all four employees, including Plaintiff.  The fact that this diverse group of employees were treated exactly the same as Plaintiff, addressing what the Company found to be the same conduct, is fatal to Plaintiff's claims of discrimination.  See Adams-Martin v. Conn. Dep't of Developmental Servs., No. 3:10-cv-00099 (VLB), 2012 U.S. Dist. LEXIS 34288, at *38 (D. Conn. Mar. 14, 2012) (summary judgment on race and color discrimination claims granted where the plaintiff offered "no evidence demonstrating that similarly-situated workers of different races received favorable treatment."); Bernard v. J.P. Morgan Chase Bank N.A., No. 08 Civ. 4784 (THK), 2010 U.S. Dist. LEXIS 10195, at *23 (S.D.N.Y. Feb. 5, 2010)

(summary judgment on gender discrimination claim granted where plaintiff failed to show more favorable treatment of similarly situated males); Braheney v. Town of Wallingford, No. 3:00 CV 2468 (CFD), 2004 U.S. Dist. LEXIS 5515, *16 (D. Conn. Mar. 30, 2004) (summary judgment granted where plaintiff alleged disparate treatment based on gender but presented no evidence that the male employees were treated more favorably because of their gender and there was no basis upon which to infer that plaintiff was disciplined because of her gender).

There is no basis upon which a factfinder could conclude that similarly situated non-Hispanic and/or male employees who engaged in similar conduct were treated more favorably. Thus, Plaintiff's race, national origin and gender discrimination claims must be dismissed.

### 2. Defendants Proffered A Legitimate, Non-Discriminatory Reason For Plaintiff's Discharge

Even if the Court concludes that Plaintiff established a prima facie case of discrimination under McDonnell Douglas, summary judgment is appropriate on Counts One, Two and Three, because Plaintiff cannot show that the Company's legitimate, non-discriminatory reason for her discharge – her refusal to sign the July 21 memorandum – was merely a pretext for discrimination based on her race, national origin and/or gender. See Reeves, 530 U.S. at 143.

As discussed in detail in Section II.B-D, *supra*, the undisputed evidence establishes that to enforce its directive that these employees cease their childish behavior, the Company instructed Plaintiff, Mr. DeGray, Mr. McCarter and Ms. Smyth to individually and separately sign the July 21 memorandum confirming the Company's expectations for their conduct toward each other going forward.  All four employees were told that failure to sign the memorandum would result in termination.  Plaintiff refused to sign the July 21 memorandum and commit to this standard for her conduct and she was terminated.  See Lessey v. Broadway Elec., No. 08

Civ. 3884 (PKC), 2009 U.S. Dist. LEXIS 105863, at *14-16 (S.D.N.Y. Nov. 2, 2009) (dismissing the plaintiff's race discrimination claim where "[u]nprofessional conduct is a legitimate, non-discriminatory reason for terminating an employee."). The other three employees did sign their individual memoranda and were not terminated.

### 3.   The Company's Legitimate, Non-Discriminatory Reason For Plaintiff's Discharge Was Not Pretext For Discrimination

In light of the Company's legitimate, non-discriminatory reason for terminating Plaintiff's employment, the burden shifts back to Plaintiff to prove that this was not the true reason for her discharge, but rather was pretext for discrimination on the basis of sex, national origin and/or race.  Reeves, 530 U.S. at 143.  Plaintiff can only satisfy this burden to overcome summary judgment by "producing not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge." Agugliaro v. Brooks Bros., Inc., 927 F. Supp. 741, 746 (S.D.N.Y. 1996) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)) (internal citations omitted).  The Court will not "[i]nfer discrimination from thin air" and Plaintiff must provide more than speculation to defeat summary judgment.  See Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).

It is undisputed that the Company's decision to terminate Plaintiff's employment was based on her refusal to sign the July 21, 2011 memorandum, even after she was told that her failure to do so would result in her termination.  Plaintiff offers no admissible, sufficient evidence that her race, national origin and/or gender were a factor in the termination decision. There is no evidence this reason was not the true reason for Plaintiff's discharge.  While Plaintiff

may personally disagree with whether her own conduct was unprofessional or childish, similar to her three co-workers' belief, that self-assessment of her workplace behavior does not overcome the Company's legitimate non-discriminatory reason for her discharge.  See, Byrnie v. Town of Cromwell Pub. Sch., 73 F. Supp. 2d 204, 214 (D. Conn. 1999).  See also Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) (a fact finder should not sit as a super-personnel department that reexamines an entity's business decisions); Donaldson v. Merrill Lynch & Co., Inc., 794 F. Supp. 498, 506 (S.D.N.Y. 1992) ("The Court will not evaluate business decisions or question a corporation's means to achieve a legitimate goal.").  As such, Plaintiff's claims of race, national origin and gender discrimination should be dismissed.  Rose v. Orville Sterling, 969 F.Supp. 865 (1997) (quoting Meiri, 759 F.2d at 998 (where employer offered legitimate nondiscriminatory reason for discharge, "'purely conclusory allegations of discrimination absent any concrete particulars,' will be insufficient to withstand defendant's motion for summary judgment").

**C.    Summary Judgment In Favor Of Defendants Is Warranted On Plaintiff's Claim of Hostile Work Environment Harassment**

Although Plaintiff does not include a separate count for a claim of hostile work environment, to the extent that Plaintiff is alleging such a claim, Plaintiff cannot satisfy her burden of proving that Ms. Smyth's conduct was based on Plaintiff's race, national origin or gender, and that it was objectively and subjectively offensive.  To prevail on her co-worker hostile work environment claim, Plaintiff must establish: (1) that she was subject to harassment so severe or pervasive that it altered the conditions of her employment and created an abusive work environment; and (2) that there is a sufficient basis for imputing the objectionable conduct to her employer.  Rios v. Buffalo & Fort Erie Pub. Bridge Auth., 326 Fed. Appx. 612, 613 (2d Cir. 2009).  A hostile work environment "must be both objectively and subjectively offensive,

25

one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  Further, the allegedly offensive conduct must be based on Plaintiff's protected characteristic(s).  See Brown v. Henderson, 115 F. Supp. 2d 445, 450-451 (S.D.N.Y. 2000) (hostile work environment claim dismissed where the undisputed evidence demonstrated that the harassing conduct was directed at both plaintiff, a female, and a male coworker as "the equal opportunity harasser escapes the purview of Title VII liability.").  See also Figueroa v. City of New York, 118 Fed. Appx. 524, 526 (2d Cir. 2004) (affirming summary judgment on hostile work environment claim because plaintiff failed to adduce evidence sufficient to link offensive but gender-neutral conduct to her gender or to the perpetrators' gender-based animus); Hicks v. Rubin, 6 Fed. Appx. 70, 73 (2d Cir. N.Y. 2001) (affirming summary judgment on plaintiff's hostile work environment claim because plaintiff "failed to show that her supervisors' conduct toward her was motivated by her race."). See also Gibson v. Wyeth Pharms., Inc., No. 07 Civ. 946 (LTS)(GAY), 2011 U.S. Dist. LEXIS 23935, at *33-34 (S.D.N.Y. Mar. 9, 2011) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)) ("[T]he Supreme Court has described the standard for asserting hostile work environment claims as demanding; courts are to avoid construing federal law as a 'general civility code.'").

In the Amended Complaint, Plaintiff relies on precisely the same conduct as she does for her discrimination claims as putative support for her harassment claim.  (Am. Compl. ¶ 1, Count One, ¶23-24.) As discussed in detail in Section IV.B, *supra*, it is undisputed that Mr. DeGray, a Caucasian male, and Mr. McCarter, an African American male, also complained about the same race-, national origin- and gender-neutral conduct of Ms. Smyth toward them, as Plaintiff did, including Ms. Smyth staring, smiling and laughing at or near them.  (Pl. Dep. 105, 140-141.)  As

26

such there can be no connection between that alleged conduct and Plaintiff's protected characteristics.

As discussed above, Plaintiff does not save her claim by relying on inadmissible hearsay implicating protected characteristics.  At best those comments were stray remarks made outside of her presence and they do not transform otherwise non-discriminatory conduct into race or gender animus.  (See Pl. Dep. 107; Am. Compl. ¶ 12.)  "For racist comments, slurs, and jokes to constitute a hostile work environment . . . there must be more than a few isolated incidents of racial enmity."  Aulicino v. New York City Dep't of Homeless Servs., 580 F.3d 73, 83 (2d Cir. 2009) (citing Schwapp v. Town of Avon, 118 F.3d 106, 110-11 (2d Cir. 1997)).  See also Gibson, 2011 U.S. Dist. LEXIS at *34 (citing Harris v. Forklift Sys., 510 U.S. 17, 21 (U.S. 1993)) ("mere utterance of an epithet which engenders offensive feelings in [an] employee does not sufficiently affect the conditions of employment to implicate Title VII.").

Similarly, even if an inadmissible hearsay stray remark may be considered to connect Ms. Smyth's alleged conduct to Plaintiff's race, national origin or gender, the incidents alleged which Plaintiff described in her testimony and viewed in their totality are not sufficiently pervasive or severe to warrant a finding of a hostile work environment.  See Gibson, 2011 U.S. Dist. LEXIS at *34-36 (dismissing plaintiff's hostile work environment claim because the only explicitly racial comment identified by plaintiff is a statement that he acknowledges was not addressed to him); Coley-Allen v. Strong Health, Univ. of Rochester Med. Ctr., 828 F. Supp. 2d 582, 587 (W.D.N.Y. 2011) ("incidents described by plaintiff are simply insufficient as a matter of law to establish a hostile work environment" because "[a]t most, she has alleged a handful of isolated incidents of race-neutral, 'boorish or offensive use of language' by coworkers . . . some of which were heard 'second-hand.'"); Palmer-Williams v. Yale New Haven Hosp., No. 3:08-1526 (JBA),

27

2011 U.S. Dist. LEXIS 32074, at *24-25 (D. Conn. Mar. 25, 2011) (dismissing plaintiff's hostile work environment claim where the "[r]ecord evidence of overtly biased conduct—[p]laintiff's coworker announcing that [plaintiff's supervisor] had said she 'didn't like working with black people'; [plaintiff's supervisor's] dismissive response (laughing) when [p]laintiff addressed that statement; and [plaintiff's supervisor] negative comments about Plaintiff's accent—is limited" and the only other evidence presented, "that [plaintiff's supervisor] was rude to her, subjected her to an unfair evaluation . . . , and accused her of misconduct. . . is not so severe or pervasive as to alter the conditions of Plaintiff's employment.").

Accordingly, the Company is entitled to summary judgment as to Plaintiff's hostile work environment claim.

**D.    Plaintiff Cannot Prevail On Her Retaliation Claim**

Plaintiff alleges, without evidentiary support or legal foundation, that the Company retaliated against her in violation of Title VII, 42 U.S.C. § 1981 and CFEPA because of the complaints that she made to management about Ms. Smyth.  (Am. Compl., Count Four ¶ 23.) Plaintiff cannot show that she complained to the Company about discrimination or harassment on the basis of her race, national origin or gender.  Moreover, even assuming Plaintiff engaged in protected activity, which she did not, there is no evidence that the termination of Plaintiff's employment was caused by the alleged nature of her complaints about Ms. Smyth's behavior. Accordingly, Plaintiff's retaliation claim must be dismissed.

Plaintiff's claims of retaliation are also analyzed under the same McDonnell Douglas burden-shifting framework applicable to Plaintiff's underlying discrimination claims.  See Davis

v. SUNY, 802 F.2d 638, 642 (2d Cir.1986).[21]   To establish a prima facie claim of retaliation, Plaintiff must show that: (1) she participated in a protected activity known to Defendants; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.   Tomka v. Seiler Corp., 66 F.3d 1295, 1308-09 (2d Cir. 1995); Kaytor, 609 F.3d at 552, 556.   Once Plaintiff establishes a prima facie case, Defendants must proffer a legitimate, non-retaliatory reason for their actions.   Thereafter, the burden then shifts back to Plaintiff to prove that Defendants' reason was merely a pretext for retaliation.   Dixon v. Int'l Fedn. Of Accountants, 416 Fed. Appx. 107, 110-11 (2d Cir. 2011); Tomka, 66 F.3d at 1308.

### 1.   Plaintiff's Retaliation Claim Fails Because She Did Not Engage In Protected Activity

Plaintiff cannot establish the first element of her prima facie burden.   Plaintiff cannot show that she engaged in protected activity – she did not complain to anyone at the Company about alleged discrimination or harassment on the basis of her race, national origin or gender. Indeed, Plaintiff complained about race-, national origin- and gender-neutral conduct of Ms. Smyth in the context of joining in the same complaints by male, non-Hispanic co-workers against Ms. Smyth and regarding the same purportedly aggravating conduct toward all of them. "Protected activity" does not include all types of workplace complaints, but rather is limited to an individual's acts that oppose alleged employment practices that violate Title VII or the CFEPA.   See 42 U.S.C. § 2000e-3(a).[22]

Plaintiff relies on her "belief" that she told Mr. Johnson that a temporary employee told

---

[21] Benn v. City of New York, 482 Fed. Appx. 637, 638 (2d Cir. 2012) (analysis of retaliation claims under 42 U.S.C. § 1981 same as under Title VII; Kaytor v. Elec. Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010) (analysis of retaliation claims under the CFEPA is the same as under Title VII).
[22] Title VII's protection against retaliation also has a "participation clause" that is not at issue in this case.

Ms. Adorno, who then told Plaintiff, that Ms. Smyth referred to her as a "fucking Puerto Rican bitch." (Pl. Dep. 107-108.)  Even assuming that Plaintiff did report this remark, this hearsay is at best a stray remark with racial and/or gender-based connotations and is insufficient as a matter of law to constitute a complaint of unlawful discrimination or harassment.  See Saqib, 2010 U.S. App. LEXIS at *3-4 (record failed to support that plaintiff had a "good faith, reasonable belief" that plaintiff was opposing an unlawful employment practice because the one incident plaintiff alleged, wherein a co-worker commented that plaintiff "looked like a terrorist," was insufficient to raise an inference of discrimination).   Further, Plaintiff's complaints were made to management and the hotline in the context of joining in the complaints of two male, non-Hispanic co-workers against Ms. Smyth and regarding the same alleged non-discriminatory conduct.  (Pl. Dep. 111-112, 114, 116, 121-122, 131, 181; Pl. Dep. Ex. 5.)

Plaintiff's general objections to Ms. Smyth's alleged conduct, as joined by Mr. DeGray and Mr. McCarter, do not constitute protected conduct because they were not complaints of discrimination.  "While a plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, she must have possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute." Wimes v. Kaleida Health, 157 Fed. Appx. 327, 328 (2d Cir. 2005) (citing Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998)).  See also, Risco v. McHugh, 868 F. Supp. 2d 75 (S.D.N.Y.) ("informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII."); Ruhling v. Tribune Co., No. CV 04-2430 (ARL), 2007 U.S. Dist. LEXIS 116, at *67 (E.D.N.Y. Jan. 3, 2007) (holding internal complaint of favoritism was not protected activity where plaintiff had not framed the complaint as involving discriminatory conduct).

Not only must Plaintiff "show that [she] reasonably believed the conduct at issue was unlawful [discrimination]," but "implicit in the requirement that the employer have been aware of the protected activity is the requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Saqib, 2010 U.S. App. LEXIS 12188, at *4 (2d Cir. June 15, 2010) (citing Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006) (noting that "protected activity" element of Title VII claim requires "good faith, reasonable belief" that plaintiff is opposing unlawful employment practice)); Wimes, 157 Fed. Appx. at 328 (citing Galdieri-Ambrosini, 136 F.3d at 292).  Plaintiff cannot satisfy these standards.

Plaintiff's alleged report of stray hearsay remarks do not support a "good faith, reasonable belief" that she was opposing an unlawful employment practice.  Saqib, *supra*; Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9234 (KMK), 2010 U.S. Dist. LEXIS 103290, at *68-69 (S.D.N.Y. Sept. 29, 2010) (holding that plaintiff "has not shown that her belief that Title VII was violated was objectively reasonable when she reported an isolated [racial] comment involving people who were not employees of Defendant, that was reported to her by another supervisor, who had told Plaintiff what she had heard from another employee."). Additionally, as Plaintiff complained, expressly and inferentially, of the same conduct by Ms. Smyth directed toward two non-Hispanic men, Plaintiff's complaints to the Company do not support a basis for understanding that discrimination was at issue.  Accordingly, the totality of the circumstances established by the record demonstrates that the Company did and should not have reasonably understood Plaintiff's complaints to be allegations of unlawful discrimination. Wimes, *supra*; Bennett v. Hofstra Univ., 842 F. Supp. 2d 489, 501-502 (E.D.N.Y. 2012) (holding that plaintiff failed to set forth a prima facie case of retaliation because even assuming

31

plaintiff had a good faith, reasonable belief that he was the victim of gender discrimination, he "failed to establish that there is a genuine issue of material fact with respect to whether [the defendant] understood, or reasonably could have understood, that his complaints were about gender discrimination.").

> **2.    There Is No Evidence Of A Causal Connection Between The Alleged Protected Activity And Plaintiff's Discharge**

Even assuming Plaintiff can show that she engaged in protected activity, Plaintiff's retaliation claim should be dismissed because there is no causal connection between any alleged protected activity and her discharge.  There is no evidence that her termination was caused by any alleged complaint that Ms. Smyth's behavior constituted discrimination.  Rather, in addition to Plaintiff, three other employees – Ms. Smyth, Mr. DeGray and Mr. McCarter – who are not alleged to have engaged in protected conduct – were all directed to sign the same July 21 memorandum as Plaintiff for the purposes of confirming their commitment not to engage in unprofessional behavior going forward.   See Woodard v. TWC Media Solutions, Inc., No. 09-CV-3000 (BSJ)(AJP), 2011 U.S. Dist. LEXIS 1536, at *29 (S.D.N.Y. Jan. 3, 2011) (dismissing plaintiff's retaliation claim where "she can point to no other employee who [engaged in the same conduct] and [was] not treated the same way.").

Further, there is no evidence that Mr. Young – the decisionmaker on requiring the employees to sign the memorandum or face termination – was aware of Plaintiff's alleged report to Mr. Johnson that another employee had been told that Ms. Smyth referred to Plaintiff as a "Puerto Rican bitch."   Thus, a rational factfinder has no basis to infer that the termination decision was made because of Plaintiff's alleged "complaint" to Mr. Johnson.  See Butler v. Raytel Med. Corp., 150 Fed. Appx. 44, 47 (2d Cir. 2005) (holding that plaintiff "failed to

32

produce evidence of a causal connection between the protected activity and the adverse action" because plaintiff "offered no evidence that his supervisors ever became aware of his complaint, other than his apparent speculation that his supervisors inferred that sensitivity trainings and meetings had been triggered by his complaints to Human Resources.").

To the extent Plaintiff may attempt to avoid summary judgment on her retaliation claims by pointing to the temporal proximity of her Hotline call in June 2011 and her termination in July 2011, this contention fails.  While temporal proximity may be used as indirect evidence of retaliation, it alone is insufficient to support an inference of retaliation.  See Fleming v. MaxMara USA, Inc., 371 Fed. Appx. 115, 118 (2d Cir. 2010) (temporal proximity "is insufficient on its own"); El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie  case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."); Bush v. Fordham Univ., 452 F. Supp. 2d 394 (S.D.N.Y. 2006) ("[T]he timing of events alone, even if sufficient to meet the plaintiff's prima facie burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason.").

It is undisputed that Plaintiff's Hotline call did not contain any complaint regarding alleged discrimination.  In that Hotline call, Plaintiff complained that Ms. Smyth made "bullying, intimidating, and threatening gestures," including swinging a water bottle at her and laughing at her.  (Pl. Dep. Ex. 5.)  She also reported on that call that her complaint was the same as Mr. DeGray's, a Caucasian male.  Wholly absent from Plaintiff's Hotline call was any reference to her race, national origin or gender.  See Lincoln v. St. Francis Hosp. & Med. Ctr., No. 3:03CV01418 (AWT), 2006 U.S. Dist. LEXIS 59917, at *28-30 (D. Conn. Aug. 24, 2006)

33

(summary judgment granted on retaliation claim where "plaintiff's grievance . . . failed to provide any notice to the Hospital that she believed she was being discriminated against based on her race. The grievance makes no mention of race or discrimination."). Accordingly, the closeness in time of the Hotline call to Plaintiff's discharge does not establish the existence of any causal connection between an alleged protected complaint and her termination.

> **3.   There Is No Evidence That Defendants' Legitimate, Non-Retaliatory Reason For Plaintiff's Discharge Was A Pretext For Retaliation**

Even if the Court concludes that Plaintiff established a prima facie case of retaliation, she cannot show that the Company's legitimate, nondiscriminatory reason for her discharge – her refusal to sign the July 21 memorandum – was merely a pretext for retaliation. See Reeves, 530 U.S. at 143; Tomka, 66 F.3d at 1308.

As set forth in Section IV.B, *supra*, there is no genuine issue of material fact that Plaintiff, along with three other employees, who are not alleged to have engaged in protected activity, were instructed to sign a memorandum setting forth the Company's expectations for professional conduct. Plaintiff was treated the same as these other employees and was terminated when she did not sign the memorandum. There is no evidence that Plaintiff's refusal to sign the memorandum was not the true reason for her discharge. Plaintiff's personal disagreement with whether she engaged in childish conduct and petty disputes with Ms. Smyth is insufficient as a matter of law to state a claim for retaliation. See Minton v. Lenox Hill Hospital, 160 F. Supp. 2d 687, 696 (S.D.N.Y. 2001) (finding that plaintiff failed to show pretext and explaining that even if supervisors "were wrong in believing the complaints of [co-workers] over plaintiff's denials, the results would be the same"); Scaria, 117 F.3d at 655.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation

claims under Title VII and CFEPA.

### E.    Plaintiff Cannot Establish A Claim for Negligent Retention and Supervision

In Plaintiff's claim for negligent retention and supervision, Plaintiff alleges that the Company "hired and retained Jessica Smyth;" the Company should have known that Ms. Smyth's actions towards Plaintiff would cause injuries to Plaintiff; the Company "should have known that Ms. Smyth had threatened, harassed and created a hostile work environment as to other employees prior to her actions toward [Plaintiff];" the Company did not question or investigate the complaints made by Plaintiff or other employees about Ms. Smyth's actions; and the Company's "failure to question or investigate the illegal conduct of Ms. Smyth constitutes negligent retention and supervision of [Ms. Smyth]".  (Am. Compl. ¶¶ 23, 26-29.)

### 1.    Plaintiff Cannot State A Negligence Claim Based On Conduct Occurring In The Course of Ongoing Employment

Plaintiff's claim of negligent retention and supervision is barred by <u>Perodeau</u> and its progeny.  According to applicable law, Plaintiff:

> is precluded from bringing claims for negligent supervision and negligent misrepresentation even though those claims are not preempted by the [Worker's Compensation Act].  The Connecticut Supreme Court has held that claims of negligence in the context of continuing employment that result in emotional distress are barred as a matter of law.

<u>Grunberg v. Quest Diagnostics, Inc.</u>, No. 3:05CV1201(VLB), 2008 U.S. Dist. LEXIS 8205, at *26 (D. Conn. Feb. 5, 2008) (citing <u>Perodeau v. City of Hartford</u>, 259 Conn. 729, 758-63 (2002)).  "Courts in this district have routinely applied this principle to all claims of negligence occurring in the course of employment."  <u>Id.</u> (citing <u>Antonopoulos v. Zitnay</u>, 360 F. Supp. 2d 420, 431-32 (D. Conn. 2005); <u>Rosario v. J.C. Penney</u>, 463 F. Supp. 2d 229, 233 n.9 (D. Conn. 2006); <u>Dinice-Allen v. Yale-New Haven Hosp.</u>, No. 3:06CV00675(PCD), 2008 U.S. Dist.

LEXIS 1802, at *19 (D. Conn. Jan. 10, 2008); Pruitt v. Mailroom Tech., Inc., No. 3:06CV1530(WWE), 2007 U.S. Dist. LEXIS 57808, *21 (D. Conn. Aug. 9, 2007)).  See also McKinney v. DOT, No. 3:06-cv-2055 (WWE), 2010 U.S. Dist. LEXIS 45773, at *15 (D. Conn. May 6, 2010) (dismissing the plaintiff's negligent supervision claim because the claim related to plaintiff's work environment and "this Court has found on numerous occasions that Connecticut bars all negligence-based emotional distress claims occurring within a continuing employment context.").  Therefore, Plaintiff's negligent retention and supervision claim is defective because the events underlying these claims occurred during the course of continuing employment and, as such, the claims are barred by case law in this District interpreting Perodeau.[23]

To the extent Plaintiff claims that she suffered "physical and bodily injuries," her claim of negligent retention and supervision is barred by the Connecticut Workers' Compensation Act. (Am. Compl. ¶ 30.)  "[W]hen a physically injured plaintiff also works for the defendant employer, any potential claim for negligent supervision is barred by Connecticut's workers' compensation scheme, which provides the exclusive remedy for on-the-job injuries." Antonopoulos, 360 F. Supp. 2d at 430 (citing Conn. Gen. Stat. § 31-284) (granting defendants' motion for summary judgment as to plaintiff's claim of negligent supervision).  See also Pruitt v. Mailroom Tech., Inc., No. 3:06cv1530(WWE), 2007 U.S. Dist. LEXIS 57808, at*20-21 (D. Conn. Aug. 9, 2007) (dismissing plaintiff's negligent supervision claim because "[a]ny claim for physical injury damages suffered on the job due to an employer's negligence are barred by the state workers' compensation laws" and "Connecticut law does not recognize negligence-based emotional distress claims occurring within the continuing employment relationship").

---

[23] To the extent Plaintiff claims that negligent infliction of emotional distress was foreseeable, Perodeau applies, and such claim is not actionable tortious conduct.

> **2.     Even If Plaintiff May Bring Such A Claim, The Undisputed Facts Establish That It Fails As A Matter Of Law**

Even if Plaintiff's negligence based emotional distress claim was not barred by <u>Perodeau</u>, Plaintiff cannot establish the requisite "breach of duty by the defendant and a causal connection between the defendant's breach and the resulting harm to the plaintiff." <u>Catz v. Rubenstein</u>, 201 Conn. 39, 44 (1986). "The existence of a duty is question of law." <u>Shore v. Stonington</u>, 187 Conn. 147, 151 (1982). "Whether the claim is for . . . negligent supervision or negligent retention, a plaintiff must allege facts that support the element of forseeability." <u>Elbert v. Conn. Yankee Council, Inc.</u>, No. CV010456879S, 2004 Conn. Super. LEXIS 1924, at *38-39 (Conn. Super. Ct. July 16, 2004) (granting employer's motion to strike). This is because:

> The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. It is well settled that defendants cannot be held liable for their alleged negligent hiring, training, supervision or retention of an employee accused of wrongful conduct unless they had notice of said employee's propensity for the type of behavior causing the plaintiff's harm . . . . The test that is often applied in determining whether there exists a duty to use care is the foreseeability of harm. Would the ordinarily prudent man in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? This does not mean foreseeability of any harm whatsoever or foreseeability that the particular injury which resulted would occur. It is, in short, the foreseeability or anticipation that harm of the general nature of that suffered would be likely to result, which gives rise to a duty to use due care, breach of which might constitute negligence.

<u>Id.</u> (Internal citations omitted.).

In determining whether a duty exists, the key element is foreseeability. <u>See</u> <u>Fraser v. United States</u>, 236 Conn. 625, 632 (1996). Courts interpret "this foreseeability requirement as one in which the employer knew or should have known of the employee's propensity to engage in the alleged harmful conduct." <u>Blandon v. Teamsters Local Union No. 443</u>, No. 3:10cv463(VLB), 2011 U.S. Dist. LEXIS 119328, at *41 (D. Conn. Oct. 17, 2011). "If it is not

foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 385-86 (1994) (citations omitted). See also Miller v. Edward Jones & Co, 355 F. Supp. 2d 629, 648-649 (D. Conn. 2005) (granting employer's motion for summary judgment on plaintiff's claims of negligent supervision and retention because there was no evidence that the employer was put on notice of plaintiff's supervisor's "propensity to engage in the tortious conduct complained of by [plaintiff] during the course of [the supervisor's] employment.").

In Miller, the Court found that although it was undisputed that the plaintiff complained on many occasions regarding her difficulties with her supervisor, her complaints were in "vague terms," referring to the supervisor as "very demanding" and "abusive." Id. at 649. Further, even though the record showed that the employer received complaints about the supervisor previously, these complaints, like the plaintiff's "simply intimated that [the supervisor] was difficult to work with" and not that the supervisor was engaged in conduct implicating discrimination – in that case discussions of a sexual nature. Id. Accordingly, the Court held that on these facts "a reasonable jury could not conclude that [the employer] was on notice that [the supervisor] had a tendency to harass, invade the privacy of, or inflict emotional distress on employees with whom he worked." Id.

As in Miller, there is no evidence here that Ms. Smyth had any history of creating a discriminatory hostile work environment, nor is there any other evidence that would establish foreseeability.   There is no evidence of complaints by other employees to the Company regarding unlawful discriminatory or harassing conduct by Ms. Smyth.  What is established by

38

the record is that when Plaintiff and the other employees complained about Ms. Smyth, as well as when Ms. Smyth complained about them, the Company instructed them to stop and took further action in response to their concerns.

Where Plaintiff cannot point to any prior conduct of which the Company should have been aware or any complaints of unlawful harassment or discrimination to the Company made by Plaintiff or another Company employee, she cannot establish the requisite foreseeability and, as a result, cannot establish that the Company had a duty of care.  Accordingly, the Company is entitled to summary dismissal of Plaintiff's claim of negligent retention and supervision.  See Blandon, 2011 U.S. Dist. LEXIS at *40-43 (granting defendant's motion for summary judgment on plaintiff's negligent supervision claim where there was no evidence that the defendant "had notice of [the employee's] alleged propensity for engaging in a practice of discriminatory referrals."); Mathieu v. Whole Foods Market Group, No. 3:08CV01317(AWT), 2010 U.S. Dist. LEXIS 23479, at *24 (D. Conn. Mar. 15, 2010) (dismissing plaintiff's negligent supervision claim where plaintiff could not prove that he suffered an injury due to defendant's failure to supervise an employee whom defendant had a duty to supervise, as the only evidence in the record is that when plaintiff and another employee were having a problem, defendant responded).

V.      <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that this Court grant its

Motion for Summary Judgment on all claims in Plaintiff's First Amended Complaint.


DEFENDANTS,
EGS ELECTRICAL GROUP, LLC AND
OZ GEDNEY COMPANY, LLC

By:      /s/ Alison Jacobs Wice
         Robert Fischer (ct 01295)
         Alison Jacobs Wice (ct 21771)
         Kristi M. Rich (ct 28066)
         Jackson Lewis LLP
         90 State House Square, 8th Floor
         Hartford, CT  06103
         P: (860) 522-0404
         F: (860) 247-1330
         fischera@jacksonlewis.com
         wicea@jacksonlewis.com
         richk@jacksonlewis.com

1

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

This 29th day of April, 2013

/s/ Kristi M. Rich_____
Kristi M. Rich

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bernard v. J.P. Morgan Chase Bank N.A.,
   No. 08 Civ. 4784 (THK), 2010 U.S. Dist. LEXIS 10195 (S.D.N.Y. Feb. 5, 2010) ...............23

Butler v. Raytel Med. Corp.,
   150 Fed. Appx. 44 (2d Cir. 2005) ............................................................................................32

Cai v. Wyeth Pharms., Inc.,
   No. 09 Civ. 5333 (GBD), 2012 U.S. Dist. LEXIS 38484 (S.D.N.Y. Mar. 19, 2012) .............34

Chamberlin v. Principi,
   247 Fed. Appx. 251 (2d Cir. 2007)..........................................................................................33

Davis v. SUNY,
   802 F.2d 638 (2d Cir.1986).......................................................................................................28

Donaldson v. Merrill Lynch & Co., Inc.,
   794 F. Supp. 498 (S.D.N.Y. 1992) ..........................................................................................25

Fleming v. MaxMara USA, Inc.,
   371 Fed. Appx. 115 (2d Cir. 2010)..........................................................................................33

Grillo v. New York City Transit Auth.,
   291 F.3d 231 (2d Cir. 2002)......................................................................................................21

Hargett v. National Westminster Bank, USA,
   78 F.3d 836 (2d Cir. 1996)........................................................................................................15

Kaytor v. Elec. Boat Corp.,
   609 F.3d 537 (2d Cir. 2010) .....................................................................................................29

McDonnell Douglas Corp. v. Green,
   411 U.S. 792 (1973).............................................................................................................15, 28

Norton v. Sam's Club,
   145 F.3d 114 (2d Cir. 1998)......................................................................................................24

Rose v. Mendon Leasing Co.,
   969 F. Supp. 865 (E.D.N.Y. 1997) ..........................................................................................21

Ruhling v. Tribune Co.,
   No. CV 04-2430 (ARL), 2007 U.S. Dist. LEXIS 116 (E.D.N.Y. Jan. 3, 2007).....................30

Scaria v. Rubin,
    117 F.3d 652 (2d Cir. 1997)...................................................................................25

Texas Dept. of Community Affairs v. Burdine,
    450 U.S. 248 (1981)........................................................................................15

**STATUTES**

42 U.S.C. § 2000e-3(a) ..................................................................................Page

**OTHER AUTHORITIES**

Rule 56..........................................................................................................1